IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

**LARRY ROSS, JR,**                                    Case No. 1:16 CV 1500

        Petitioner,                                    Judge John R. Adams

        v.                                                      Magistrate Judge James R. Knepp, II

**ALAN LAZAROFF, WARDEN,**

        Respondent.                                    REPORT AND RECOMMENDATION

### INTRODUCTION

Petitioner Larry Ross, Jr. ("Petitioner"), a prisoner in state custody, filed a Petition seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. 1). Respondent, Warden Rhonda Richard[1] ("Respondent") filed an Answer/Return of Writ (Doc. 6) with attached exhibits (Docs. 6-1 – 6-6). Petitioner filed a Reply/Traverse (Doc. 9), and Respondent filed a Sur-reply (Doc. 13). The district court has jurisdiction under § 2254(a). This matter has been referred to the undersigned for a Report and Recommendation pursuant to Local Rule 72.2(b)(2). (Non-document entry dated July 1, 2016). For the reasons discussed below, the undersigned recommends the Petition be denied.

### FACTUAL BACKGROUND

For purposes of habeas corpus review of state court decisions, findings of fact made by a state court are presumed correct and can only be contravened if the habeas petitioner shows, by clear and convincing evidence, that the state court's factual findings were erroneous. § 2254(e)(1);

---

1. Petitioner is currently incarcerated at the Madison Correctional Institution. Rhonda Richard is the warden of that institution, and as such, is the proper Respondent.

*Moore v. Mitchell,* 708 F.3d 760, 775 (6th Cir. 2013); *Mitzel v. Tate,* 267 F.3d 524, 530 (6th Cir. 2001). This presumption of correctness applies to factual findings made by a state court of appeals based on the state trial court record. *Mitzel,* 267 F.3d at 530. The Eighth District Court of Appeals, Cuyahoga County, made the following findings of fact:

> {¶ 5} The crime in this case took place in Cleveland. Ross's codefendant, Chisholm, testified that on the day of the incident, Ross called him and the two discussed "hitting a lick," which means committing a robbery. After their conversation, Ross picked Chisholm up in a white Kia and they drove to Ross's uncle, Lavelle Ross's, house, where Ross got a revolver handgun and a 9-mm handgun. Chisholm took the revolver, and Ross took the 9-mm gun. The two then drove around looking for a "dope boy" to rob. According to Chisholm, Ross was wearing a gray "hoodie."

> {¶ 6} Chisholm testified that they did not want to commit the robbery while using Ross's vehicle, so they planned to steal a vehicle. They happened upon a minivan that was running and decided to steal it. The victim, 16–year–old Teshawn Johnson, was inside the van.

> {¶ 7} Teshawn testified that he had gone to work that evening with his father, Tyrone Johnson, who was a contractor for the city of Cleveland. The father's minivan was parked outside of a house where the father was inside snaking out a drain; Teshawn stayed in the van to sleep.

> {¶ 8} According to Teshawn, two men forced their way into his father's van, one on each side. They forced Teshawn to the middle and told him "shut up and not say anything." Teshawn testified that the "smaller, older" man started driving the van, and he told the "bigger, younger" man to check Teshawn's pockets. The "smaller, older" man was Chisholm, and the "bigger, younger" man was Ross. Teshawn described Ross as wearing a "blue basketball type jersey."

> {¶ 9} Ross took Teshawn's cell phone. They ordered Teshawn to take off his pants and shoes, which Teshawn did. Teshawn testified that he saw a gun.

> {¶ 10} After driving a couple of blocks, Teshawn was told to get out of the minivan through the side sliding door, which he did; he still did not have his pants or shoes on. As it happened, a police car was in the vicinity as Teshawn was getting out of the van. The officers in the car, Vasile Nan and Robert Kowza, saw Teshawn being pushed out of the van without pants, and curious as to what was occurring, positioned their vehicle headlight-to-headlight with the van.

> {¶ 11} Teshawn told the police that he had just been robbed, and the officers immediately pursued the vehicle, whose driver was speeding in reverse down the

one-way street. The driver of the van proceeded that way for two blocks, before making a turn onto another street. During the pursuit, the police shone their mounted spotlight into the van; they saw the man driving, later identified as Ross, and the passenger, later identified as Chisholm.

{¶ 12} In a broadcast call, Officer Nan described Ross as wearing a blue hooded sweatshirt; in another call to dispatch, the officer described Ross as wearing a gray hooded sweatshirt. Officer Nan testified that he confused the colors and meant that Ross had a blue shirt on under a gray hooded sweatshirt.

{¶ 13} The pursuit of the van ended when it went over a curb and crashed into a house. Both Ross and Chisholm exited the van and ran. The police pursued them on foot; Officer Nan followed Ross and Officer Kowza followed Chisholm. While running, Ross fired a gun at Officer Nan, who returned fire. A discharged bullet, determined to have been fired from Ross's gun, hit a minivan (not Tyrone's) parked on the street and shattered its rear window.

{¶ 14} Other police officers arrived to assist. Ross continued to run and, at one point, took off his gray sweatshirt and threw it in a yard. When encountered by the police on another street, Ross reversed his direction and ran back toward the yard where he had thrown his sweatshirt. He hid under a back porch. The police saw Ross and ordered him out, but he refused. Ross was dragged out from under the porch by the police.

{¶ 15} After his arrest, Ross talked to the police. He told them that he had been walking down the street when an older black man approached him with a gun and told him to run. So Ross ran, and the next thing he knew, he was being ordered to the ground. He then realized that it was the police, and they (six officers) started beating him, telling him he should not have shot at an officer.

{¶ 16} Ross denied having had a gun or wearing a gray hooded sweatshirt. Ross told the police that his cousin had dropped him off in the neighborhood and he was on his way to see a woman. Ross did not have an address or phone number for the woman he claimed he was on his way to see, however.

{¶ 17} The police recovered a set of keys from Ross and, using the remote, determined that they were the keys from a nearby-parked white Kia, the same kind of car Chisholm said Ross was driving before they stole the van. When told that his car was found nearby, Ross told the police that he did not want the woman he was on his way to see to know he had a car, out of fear that she would frequently ask him to drive her children around.

{¶ 18} Teshawn's cell phone was recovered from Ross's pocket. The police canvassed the area where Ross had been running and recovered his sweatshirt. They also recovered a gun from the same yard where the sweatshirt was. The gun was submitted for DNA testing; the testing concluded that Ross's DNA was on the

weapon. The spent bullet fired at Officer Nan was recovered, and it was determined that it was fired from the gun with Ross's fingerprints. The gun's registered owner was Lavelle Ross, Ross's uncle.

{¶ 19} Another gun was recovered from inside Tyrone's van. Tyrone testified that he did not have any weapons in the van.

{¶ 20} Ross and the gray sweatshirt were tested for gunshot residue; no residue was found. The forensic expert testified that a lack of residue does not mean that a person did not fire a weapon. The expert testified that the residue may have never landed on the person's hands or clothing. The expert further testified that gunshot residue can easily come off by rubbing or washing hands.

{¶ 21} Ross testified at trial. He denied any involvement in the robbery. He reiterated that his cousin had dropped him off in the neighborhood that evening so that he could see a woman. Ross testified that he was married, and he, his wife and children lived in Bedford. He was having an affair, and his wife did not know. So that his wife would not see his car at his mistress's house, he always parked away from her home and walked there.

{¶ 22} Ross also maintained his prior version of events, that he was approached by a man with a gun. But, at trial he testified that the man told him not to run, but he ran anyway. Ross testified that he ran about three houses into a backyard when he heard the police say "freeze." Two officers apprehended him and then five or six more beat him, saying that he had just shot an officer.

{¶ 23} Ross testified that his DNA might have been on his uncle's gun because he frequently did work at his uncle's house and had to move the gun to do the work.

{¶ 24} Ross admitted to having a prior criminal record, which included a 2005 conviction for felonious assault with a gun.

{¶ 25} According to Ross, everyone who testified against him was lying.

(Ex. 14, Doc. 6-1, at 123-28); *State v. Ross*, 2013 WL 3808445, at *1-3 (Ohio Ct. App.).

## PROCEDURAL BACKGROUND

*State Conviction*

On September 20, 2011, a Cuyahoga County Grand Jury indicted Petitioner on one count

of aggravated robbery (Count 1); one count of kidnapping (Count 2); one count of grand theft

(Count 3); one count of petty theft (Count 4); one count of felonious assault (Count 5); two counts

of criminal damaging or endangering (Counts 6 and 7); one count of having weapons under disability (Counts 8); and one count of tampering with evidence (Count 10).[2] (Ex. 3, Doc. 6-1, at 8-15). Counts 1 and 2 carried two firearm specifications, a notice of prior conviction specification, and a repeat violent offender violation. (Ex. 3, Doc. 6-1, at 8-10). Count 5 carried three firearm specifications, a notice of prior conviction specification, and a repeat violent offender specification. (Ex. 3, Doc. 6-1, at 11-12). On October 4, 2011, Petitioner pleaded not guilty. (Ex. 3, Doc. 6-1, at 16). Thereafter, Petitioner requested a Bill of Particulars, which the State of Ohio provided on October 14, 2011. (Ex. 4, Doc. 6-1, at 17-20). Petitioner waived a jury trial for the charge of having weapons under disability, notice of prior conviction specification, and repeat violent offender specification. (Ex. 7, Doc. 6-1, at 24). The jury and the trial court found Petitioner guilty on all counts and specifications. (Ex. 8, Doc. 6-1, at 25-27).

The court sentenced Petitioner to three years for all firearm specifications on Count 1, to be served consecutively to a six-year base sentence; six years on Count 2, to run concurrent to Count 1; twelve months on Count 3; 180 days and on Count 4; 180 days on Count 6; ninety days on Count 7; and eighteen months on Counts 8 and 10, all to run concurrent to each other and all other counts. *Id.* Furthermore, Petitioner was sentenced to five years for the base sentence on Count 5 and seven years for its firearm specification, to be served consecutively to each other and all other sentences, for an aggregate sentence of twenty-one years. *Id.*

---

2. Count 9 related solely to Chisholm, Petitioner's co-defendant. (Ex. 14, Doc. 6-1, at 122); *State v. Ross*, 2013 WL 3808445, at *1 n.1 (Ohio Ct. App.).

*Direct Appeal*

      With the assistance of counsel, Petitioner timely appealed his conviction and sentence to the Eighth District Court of Appeals, Cuyahoga County. (Ex. 11, Doc. 6-1, at 40). He raised seven assignments of error:

1.     Defendant's convictions are against the manifest weight of the evidence.

2.     The trial court erred by not providing the jury with cautionary instructions included in O.R.C. § 2923.03(D) regarding accomplice testimony.

3.     The defendant's convictions for aggravated robbery and for the three-year firearm specification as contained in counts one and two were not supported by sufficient evidence necessary to support the conviction.

4.     The trial court erred in finding that the offenses of aggravated robbery and kidnapping are not allied offenses of similar import.

5.     The trial court erred when it received a jury question and answered it outside the presence of the defendant.

6.     The trial court erred in sentencing the defendant to consecutive sentences without making the required findings as set forth in H.B. 86.

7.     The defendant was deprived of his right to a fair trial by the cumulative effect of all errors, even if any one of those errors may be ruled as harmless.

(Ex. 12, Doc. 6-1, at 55). The Eighth District Court of Appeals, Cuyahoga County, affirmed Petitioner's convictions on July 18, 2013, but reversed judgment and remanded for re-sentencing as to Count 5 only. (Ex. 14, Doc. 6-1, at 120-45); *Ross*, 2013 WL 3808445. The court found the trial court failed to make a statutorily-required finding before imposing consecutive sentencing. Ross, 2013 WL 3808445, at *10-11. Petitioner did not appeal to the Ohio Supreme Court.

      On November 8, 2013, Petitioner was re-sentenced on Count 5 pursuant to the remand by the Eighth District Court of Appeals. (Ex. 15, Doc. 6-1, at 146-47). Petitioner was re-sentenced to five years on the base sentence and seven years for all the firearm specifications, to run consecutive

to each other and to all his other sentences, for a total of twelve years on the remanded Count 5.[3]

(Ex. 15, Doc. 6-1, at 146-47).

Represented by new counsel, Petitioner appealed his conviction and sentence regarding

Count Five to the Eighth District Court of Appeals, Cuyahoga County. (Ex. 16, Doc. 6-1, at 148-

52). Petitioner raised the following assignments of error:

1. Defendant was denied due process of law when the trial court did not afford his constitutional right of allocution at his sentencing.

2. Defendant was denied due process of law when and subjected to multiple punishments when the court failed to merge the firearm specifications.

3. Defendant was denied due process of law when the court relied upon its prior recollection to impose a sentence in this case.

4. Defendant was denied his Sixth Amendment rights to when he was sentenced to more than the minimum sentence based on judicial fact finding.

5. Defendant was denied due process of law when the court imposed a consecutive sentence based upon a rote recitation of the statute regarding consecutive sentences.

6. Defendant was denied due process of law when the court failed to consider defendant's present situation when it imposed its sentence.

7. Defendant was denied due process of law when he was sentenced to a consecutive [sentence] when, at the time of the event, consecutive sentences were not statutorily authorized.

(Ex. 17, Doc 6-1, at 157). On October 16, 2014, the Court of Appeals affirmed the judgment of

the trial court but remanded the case for "the sole purpose of correcting the sentencing entry dated

November 9, 2013, with a *nunc pro tunc* entry to reflect the findings the court made on the record.

Journal entries must conform to the demonstrated record." (Ex. 19, Doc. 6-1, at 192-208); *State v.*

---

3. The trial court re-sentenced Petitioner to the same sentence it originally gave him. *See* Ex. 8, Doc. 6-1, at 25-26.

*Ross*, 2014 WL 5306717 (Ohio Ct. App.). Thereafter, Petitioner applied for reconsideration (Ex. 20, Doc. 6-1, at 209-13), which the appellate court denied (Ex. 22, Doc. 6-1, at 220).[4]

Petitioner, through counsel, filed an appeal to the Ohio Supreme Court on December 22, 2014. (Ex. 23, Doc. 6-1, at 221-22). He raised five assignments of error:

1.  A defendant has been denied due process of law when he has been subjected to unconstitutional multiple punishments in violation of his fifth amendment rights when the court failed to merge firearm specifications arising out of the same transaction.

2.  A defendant has been denied due process of law when the trial court relied upon its flawed recollection of a prior sentencing to impose a new sentence.

3.  A defendant has been denied a Sixth Amendment right when he has been sentenced to more than a minimum sentence based on judicial fact finding.

4.  A defendant has been denied due process of law where the court failed to consider a defendant's present situation when it imposed a new sentence.

5.  A defendant has been denied due process of law when sentenced to a consecutive sentence, when at the time of the offense a consecutive sentence was not statutorily authorized.

(Ex. 24, Doc. 6-1, at 224). On June 24, 2015, the Ohio Supreme Court declined jurisdiction. (Ex. 25, Doc. 6-1, at 258).

### FEDERAL HABEAS CORPUS

On June 17, 2016, Petitioner, *pro se*,[5] filed the instant habeas Petition raising a single ground for relief:

_____

4. On October 21, 2014, the trial court issued a *nunc pro tunc* entry on the November 8, 2013 sentencing entry. (Ex. 26, Doc. 6-1, at 259-60). The court stated its findings on the necessity for consecutive sentences, including the fact that Petitioner committed these crimes while out on bond for two other cases. *Id.*

5. Although the Petition ostensibly bears the signature of attorney Paul Mancino, Jr., *see* Doc. 1, at 15, the Petition was filed by Petitioner himself and Attorney Mancino did not enter an appearance in this case until October 28, 2016, *see* Doc. 7. This is discussed further below.

**GROUND ONE:** Ineffective assistance of trial counsel. Counsel did not challenge weapon's [sic] testimony nor did he challenge Officer's [sic] Crosby's testimony that another suspect was arrested and not the petitioner.

**Supporting Facts:** At trial Det. Kooser testified that the .45 caliber weapon which was used to sentence the petitioner was inoperable at the time that it was recovered. According to Cleveland Patrol Crosby on the night in question: "While assigned to zone car 4B36, Officer nan [sic] announced a foot chase . . . We arrived and began to search for suspects, when Nan yelled at the suspect to show his hand . . . . we ran to assist nan [sic]. The suspect Duane Chisolm was hiding in a garage at 3699 E. 104th Street . . . . I handcuffed the suspect and placed him in zone car 4D21 with officer Edge. This story was later changed and redirected to the petitioner. In 2015, Mr. John McCurley of John's Auto Store provided my family with information that Chisolm has [sic] shot him with a .45 on 3/11/2011.

(Doc. 1, at 5). Respondent filed an Answer/Return of Writ on September 30, 2016, contending Petitioner's sole ground was procedurally defaulted, and he had not shown cause and prejudice to overcome the default. (Doc. 6, at 12-15). Alternatively, Respondent contends Petitioner's claim fails on the merits. *Id.* at 16-20.

On October 28, 2016, Attorney Paul A. Mancino, Jr. entered an appearance on behalf of Petitioner (Doc. 7), and filed a motion for extension of time to file a Reply/Traverse (Doc. 8). Following this Court's grant of that extension of time, Petitioner, this time through counsel, filed his Reply/Traverse. (Doc. 9). In it, he contends his initial *pro se* Petition should be liberally construed, and raises several additional grounds for relief relating to sentencing error, double jeopardy (multiple punishments), sufficiency of the evidence, jury instructions, and a Sixth Amendment *Blakely/Apprendi* violation. *See id.*

On August 3, 2017, with leave of court, Respondent filed a sur-reply. (Doc. 13). Respondent argues: 1) Petitioner is not entitled to liberal construction of his Petition to allow additional claims; 2) a traverse is not the proper pleading for a habeas petitioner to raise additional grounds for relief; and 3) any amendment of the Petition would be futile because the additional claims in the traverse are non-cognizable, procedurally defaulted, or without merit. *Id.*, at 2-3.

**STANDARD OF REVIEW**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "dictates a highly deferential standard for evaluating state-court rulings which demands that state court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005). An application for habeas corpus cannot be granted for a person in custody pursuant to a state conviction unless the adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d). Thus, a court may grant habeas relief if the state court arrives at a conclusion that is contrary to a decision of the Supreme Court on a question of law, or if the state court decides a case differently than did the Supreme Court on a materially indistinguishable set of facts. *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

The appropriate measure of whether a state court decision unreasonably applied clearly established federal law is whether that state adjudication was "objectively unreasonable" and not merely erroneous or incorrect. *Williams*, 529 U.S. at 409-11; *see also Machacek v. Hofbauer*, 213 F.3d 947, 953 (6th Cir. 2000). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). To obtain "habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

**DISCUSSION**

The undersigned will first address the single ground raised in the original Petition (Doc. 1)—ineffective assistance of trial counsel—and then turn to the additional grounds raised in Petitioner's Reply/Traverse (Doc. 7).

### Ground One: Ineffective Assistance of Trial Counsel

In Ground One, Petitioner asserts he received ineffective assistance of trial counsel. (Doc. 1, at 5). Petitioner avers counsel was ineffective for failing to challenge the testimony of the weapons expert and Officer Crosby[6]. *Id.* Respondent argues Ground One is procedurally defaulted because Petitioner failed to raise the claim in state court and has failed to show cause and prejudice, or a manifest miscarriage of injustice would otherwise result. (Doc. 6, at 12-15).

*Exhaustion & Procedural Default*

In order to seek a writ of habeas corpus in federal court, a petitioner must first satisfy the requirements of 28 U.S.C. § 2254, which states: "[a]n application for a writ of habeas corpus . . . shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State." Exhaustion requires a petitioner to "fairly present" federal claims "to the state courts, including the state court of appeals and the state supreme court." *Bray v. Andrews*, 640 F.3d 731, 734-35 (6th Cir. 2011) (citing *Wagner v. Smith*, 581 F.3d 410, 414 (6th Cir. 2009)); *see O'Sullivan v. Boerckel* 526 U.S. 838, 845 (1999). This is to "[alert] [the state court] to the fact that the prisoner[] [is] asserting claims under the United States Constitution." *Duncan v. Henry*, 513 U.S. 364, 365-66 (1995) (internal quotation marks omitted) (citations omitted). In order to accomplish this, a petitioner must fairly present the substance of his federal constitutional claims

---

6. It is not clear who Officer Crosby is. He does not appear on the list of witnesses appearing at Petitioner's trial. *See* Doc. 6-2, at 3 (listing testifying police officers: Officers Nan, Kowza, Mangan, Nguyen, Reese, Przbylski, and Kooza, and Detective Diaz).

to the state courts before habeas relief. *Whitings v. Burt*, 395 F.3d 602, 612 (6th Cir. 2005) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971)). Hence, "a habeas petitioner must present both the factual and legal underpinnings of his claims to the state courts." *Id.* (quoting *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000)).

To determine whether a petitioner has "fairly presented" a claim to the state courts, courts look to the petitioner's:

(1)     reliance upon federal cases employing constitutional analysis;

(2)     reliance upon state cases employing federal constitutional analysis;

(3)     phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or

(4)     alleging facts well within the mainstream of constitutional law.

*King v. Berghuis*, 744 F.3d 961, 966 (6th Cir. 2014) (citing *McMeans*, 228 F.3d at 681). In addition, a claim must be presented to the state courts as a federal constitutional issue, not merely as an issue arising under state law. *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984). Furthermore, "the doctrine of exhaustion requires that a claim be presented to the state courts under the same theory in which it is later presented in federal court." *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998). A claim cannot rest on a legal theory which is separate and distinct from the one previously considered and rejected in state court. *Id.*

Related to exhaustion is the concept of procedural default, which can occur in two ways. *See Anderson*, 460 F.3d at 806. First, a claim may be procedurally defaulted if a petitioner "fails to raise a claim in state court and pursue that claim through the state's 'ordinary appellate review procedures.'" *Id.* (citing *O'Sullivan*, 526 U.S. at 848-47). A constitutional claim for relief must be presented to the state's highest court in order to satisfy the fair presentation requirement. *See O'Sullivan*, 526 U.S. at 845, 848; *Hafley v. Sowders*, 902 F.3d 480, 483 (6th Cir. 1990); *Leroy v.*

*Marshall*, 757 F.3d 94, 97, 99-100 (6th Cir. 1985). Additionally, "[i]f, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted." Williams v. *Anderson*, 460 F.3d 789, 806 (6th Cir. 2006) (citing *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982)).

Hence, if a petitioner has failed to exhaust his state remedies and is barred from raising his claim by state law, his habeas claim is procedurally defaulted. *See O'Sullivan*, 526 U.S. at 848; *Pudelski v. Wilson*, 576 F.3d 595, 605 (6th Cir. 2009). One such bar is the doctrine of res judicata. Under Ohio law, res judicata bars petitioners from litigating claims that either could have or were fully litigated at trial or on direct appeal. *Seymour v. Walker*, 224 F.3d 542, 555 (6th Cir. 2000) (citing *State v. Perry*, 10 Ohio St. 2d 175, 180 (1967)).

Second, a petitioner may procedurally default a claim if he fails "to comply with state procedural rules in presenting his claim to the appropriate state court." *Anderson*, 460 F.3d at 806. If a petitioner fails to comply with a procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted. *Id.*; *see Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). The Sixth Circuit "has consistently held that Ohio's doctrine of res judicata is an 'adequate and independent' ground justifying default." *Carter v. Mitchell*, 443 F.3d 517, 538 (6th Cir. 2006); *accord Wogenstahl v. Mitchell*, 668 F.3d 307, 341 (6th Cir. 2012); *Williams v. Bagley*, 380 F.3d 932, 966-67 (6th Cir. 2004).

In order to overcome procedural default, a petitioner must demonstrate both cause for the default and prejudice from the error. *Sutton v. Carpenter*, 745 F.3d 787, 790-91 (6th Cir. 2014) (citing *Coleman v. Thompson*, 501 U.S. 722, 749-50 (1991)). "Habeas petitioners cannot rely on conclusory assertions of cause and prejudice to overcome procedural default; they must present

affirmative evidence or argument as to the precise cause and prejudice produced." *Lundgren*, 440 F.3d at 764.

A showing of cause requires more than the mere proffer of an excuse. *Id.* Negligence on the part of a petitioner or his attorney does not qualify as "cause." *Coleman*, 501 U.S. at 783. "Ignorance of law and procedural requirements is insufficient to establish cause to excuse [a petitioner's] procedural default." *Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004). "Cause for procedural default exists where something external to the petitioner, something that cannot fairly be attributed to him, . . . impeded his efforts to comply with the State's procedural rule." *Maples v. Thomas*, 132 S. Ct. 912, 922 (2012) (emphasis omitted) (internal citations and quotations omitted). "When a petitioner fails to establish cause to excuse a procedural default, a court does not need to address the issue of prejudice." *Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000). To establish prejudice, a petitioner must demonstrate the constitutional error "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982). There is no prejudice if there is strong evidence of a petitioner's guilt and a lack of evidence to support his claim. *Id.* at 172.

Alternatively, procedural default can be overcome if a petitioner alleges "a manifest miscarriage of justice would otherwise result." *Sutton*, 745 F.3d at 790-91 (citing *Coleman*, 501 U.S. at 749-50). "A fundamental miscarriage of justice results from the conviction of one who is 'actually innocent.'" *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (citing *Murray v. Carrier*, 477 U.S. 478, 496 (1986)). To establish actual innocence, Petitioner must show "factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). "To be credible, such a claim requires a petitioner to support his allegations of constitutional error with new reliable evidence–whether it be exculpatory scientific evidence, trustworthy eyewitness

14

accounts, or critical physical evidence–that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

*Application to Ground One*

Although Petitioner timely appealed the trial court judgment, he did not raise an ineffective assistance claim. *See* Ex. 24, Doc. 6-1, at 245-56. Therefore, Petitioner failed to complete one full round of Ohio's appellate review system and failed to exhaust his state court remedies with respect to this claim. *See O'Sullivan*, 526 U.S. at 847 ("[P]risoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."); *Coleman*, 501 U.S. at 735, n.1; *Anderson*, 460 F.3d at 806.

Additionally, Petitioner can no longer raise his ineffective assistance of counsel claim due to Ohio's doctrine of res judicata, which requires claims such as ineffective assistance of trial counsel to be raised on direct appeal. *See State v. Ishmail*, 67 Ohio St. 2d 16, 18 (1981); *Perry*, 10 Ohio St. 2d at 180. Hence, because Petitioner failed to raise this claim on direct appeal and state law prohibits him from now bringing the claim, he has procedurally defaulted his ineffective assistance of counsel claim. *See O'Sullivan*, 526 U.S. at 848.

As a result, Petitioner must show cause and prejudice if this Court is to consider the merits of his claim. In the Petition, he alleges "the issue was not raised because [he] did not receive a copy of the transcript until a year later after the first attorney filed the appeal." (Doc. 1, at 6). However, Petitioner has failed to identify any specific external factor impeded his ability to obtain the transcript. Notably, Petitioner points to no evidence that he requested and was denied a trial transcript, and the record reflects no such request. *See* Ex. 29, Doc. 6-1, at 289-90 (appellate court docket sheet). Petitioner was represented by counsel on direct appeal, and Petitioner's counsel had the transcript. *See* Ex. 29, Doc. 6-1, at 289-90 (appellate court docket sheet) (October 4, 2012 entry

15

stating: "Transcript of Proceedings Filed by Appellant 4 Vols and 1 Env of Exhibits"); *see also generally* Ex. 12, Doc. 6-1, at 51-89 (appellate brief, which cites to the trial transcript). Additionally, Petitioner has not alleged appellate counsel was ineffective for failing to raise an ineffective assistance of trial counsel claim on direct appeal. *See, e.g. Hernandez v. Edwards*, 2001 WL 575594, at *7 (S.D.N.Y) ("Because he had effective assistance of appellate counsel, and his appellate counsel had the trial transcript, Hernandez's alleged lack of a trial transcript also does not constitute cause for his default."); *cf. Ingram v. Buckingham Corr. Ctr.*, 2011 WL 836826, at *5 (E.D. Va.) ("Because Ingram attended both his plea and sentencing hearings, his lack of a transcript does not constitute cause adequate to excuse his default.") (citing *McCleskey v. Zant*, 499 U.S. 467, 500 (1991) (concluding unavailability of document, the contents of which petitioner had at least constructive knowledge, did not prevent him from raising claim in his habeas petition)).

Moreover, once Petitioner did receive a copy of the transcript, he did not file a motion for leave to appeal in the state appellate court, or an Ohio Appellate Rule 26(B) application for reopening to allege that appellate counsel should have raised his ineffective assistance claim. Petitioner's negligence, or ignorance of the law or procedural requirements, does not establish cause. *See Bonilla*, 370 F.3d at 498. Thus, because Petitioner has failed to articulate an external cause for his procedural default, *see Maples*, 132 S. Ct. at 922, there is no need to address prejudice, *Simpson*, 238 F.3d at 406.

In addition, Petitioner has failed to present evidence of innocence, and hence fails to show manifest miscarriage of justice would otherwise result. Petitioner has only asserted that trial counsel did not challenge the weapons expert's testimony or Officer Crosby's testimony. (Doc. 1, at 5). Therefore, because Petitioner has failed to show cause, prejudice, or that he is actually

innocent, his first ground for relief is procedurally defaulted. *See Schlup*, 513 U.S. at 324; *Anderson*, 460 F.3d at 806.

*Merits of Ground One*

Even if Petitioner could show cause and prejudice to overcome the default, his ineffective assistance claim would also fail on the merits. Petitioner argues his trial counsel was ineffective for failing to challenge the testimonies of Officer Crosby[7] and the weapons expert. (Doc. 1, at 5) *Id.* Respondent argues Ground One is without merit because Petitioner has failed to show his counsel's performance was deficient and has failed to show the allegedly deficient performance prejudiced the defense. (Doc. 6, at 19-20). Petitioner's Reply/Traverse does not address the ineffective assistance of counsel claim. *See* Doc. 9.

Claims of ineffective assistance of counsel are governed by the two-prong test set forth in *Strickland*:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth amendment.
>
> Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant can make both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687. A petitioner "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. Under the first prong, scrutiny of counsel's performance must be highly deferential. *Id.* at 689 ("[We] must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."). "[R]eviewing courts must take care to avoid second guessing strategic decisions that failed to bear fruit." *Lundgren*,

---

7. Again, it is unclear who Officer Crosby is. *See* Doc. 6-2, at 3 (list of testifying witnesses).

440 F.3d at 770 (citing *Strickland*, 466 U.S. at 689)). With respect to the second prong, a petitioner must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. If a petitioner fails to satisfy either prong, a court need not address the other. *Id.* at 697.

First, contrary to Petitioner's assertions, on cross-examination of Detective Kooser, Petitioner's trial counsel directly challenged the operability of the weapon at the time it was recovered. (Doc. 6-4, at 115-23). Furthermore, trial counsel's opening statement highlighted the defense theory that Petitioner was allegedly mistakenly caught up in the events leading up to his arrest. (Doc. 6-3, at 75-77). This was the defense theory throughout the trial, and highlighted again in closing argument. (Doc. 6-5, at 196-98). Additionally, although the record does not reflect an "Officer Crosby", it does indicate Petitioner's trial counsel cross-examined every testifying officer. *See* Doc. 6-2, at 3 (trial transcript index).

Petitioner does not meet either prong of the *Strickland* test. First, Petitioner fails to point to any constitutionally deficient conduct on behalf of his counsel. Petitioner fails to demonstrate counsel's decisions were objectively unreasonable and rises to the level of insufficient assistance. Decisions about whether to cross-examine a witness and to what extent to cross-examine are matters of trial strategy over which attorneys "traditionally enjoy discretion . . . deciding which witnesses to call and how to examine them." *Leonard v. Warden, Ohio State Penitentiary*, 846 F.3d 832, 848 (6th Cir. 2017) (citing *Carter v. Mitchell*, 829 F.3d 455, 471 (6th Cir. 2016)); *see also Gonzales v. United States*, 553 U.S. 242, 249 (2008); *Rayborn v. United States*, 489 F. App'x 871, 878 (6th Cir. 2012) ("[W]hether to call a witness and how to conduct a witness' testimony are classic questions of trial strategy that merit *Strickland* deference."); *cf. Sowell v. Anderson*, 663 F.3d 783, 800 (6th Cir. 2011) (counsel's performance was not deficient even though he did not

cross-examine a witness to the shooting). There is a "strong presumption" that counsel's conduct falls within the wide range of reasonable professional assistance. *Bell*, 535 U.S. at 702. Petitioner has not overcome this presumption, and as a result, Petitioner fails to demonstrate counsel's performance was deficient.

Second, Petitioner fails to allege how his counsel's allegedly deficient performance was so serious as to deprive him of a fair trial. He does not argue that but for his counsel's alleged ineffectiveness, the results of his proceedings would have been different. *See Strickland*, 466 U.S. at 694. Petitioner also has failed to show prejudice. Therefore, even if Ground One is not procedurally defaulted, it should be dismissed on the merits. *See Strickland*, 466 U.S. at 687.

***Additional Grounds Raised in Reply/Traverse***

In addition to the single ground raised in the Petition, in his Reply/Traverse, Petitioner raises seven additional claims. Specifically, he contends: (1) the trial court erred in basing its re-sentencing, in part, on its own personal recollection of prior proceedings, which denied Petitioner his right of confrontation and cross-examination; (2) Petitioner's convictions were not supported by sufficient evidence; (3) the trial court failed to instruct the jury as mandated by § 2923.03(D); (4) Petitioner was subjected to unconstitutional multiple punishments in violation of the Fifth Amendment when the trial court failed to merge firearm specifications; (5) the trial court's imposition of a sentence above the minimum based on judicial factfinding violated the Sixth Amendment as set forth in *Blakely v.* Washington, 542 U.S. 296 (2004) and *Apprendi v. New Jersey*, 530 U.S. 466 (2000); (6) the trial court denied Petitioner due process when it failed to consider his present situation when imposing a new sentence; and (7) the trial court's failure to

follow applicable law in imposing a sentence violated due process. (Doc. 9). As discussed below, these additional grounds are not properly before this Court.

*Liberal Construction of Pro Se Petitions*

Petitioner, through counsel, argues that "[a]t a minimum, the petition should be read liberally in favor of petitioner" as the case originated as a *pro se* action. (Doc. 9, at 1). Presumably, therefore, Petitioner (through counsel) is arguing his Petition should be liberally construed to include the additional grounds for relief raised in his Reply/Traverse. Respondent contends the Petition was signed by Petitioner's attorney and is therefore not a *pro se* petition. (Doc. 13, at 2). Additionally, Respondent contends "it is generally accepted the generous construction of pro se filings is not limitless" and "[l]iberal construction cannot transform Ross's claims of ineffective assistance of trial counsel into the various claims raised in the traverse." *Id.*

The undersigned notes that although the Petition purports to bear the signature of Petitioner's attorney, *see* Doc. 1, at 15, the Petition was filed by Petitioner himself, and Attorney Mancino did not enter an appearance on behalf of Petitioner until over four months later, *see* Doc. 7.[8] Thus, the undersigned concludes the Petition was filed *pro se*, and is entitled to liberal construction. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004). However, even with liberal construction, the Court "is not required to conjure up unpled allegations." *Dietz v. Sanders*, 100 F. App'x 334, 338 (6th Cir. 2004); *see also Erwin v. Edwards*, 22 F. App'x 579, 580 (6th Cir. 2001). In his initial Petition, Petitioner raised

---

8. It appears Petitioner may have misinterpreted the form and written Attorney Mancino's name in the space on the Petition reserved for an attorney signature. *See* Doc. 1, at 15. Attorney Mancino had represented Petitioner in prior proceedings. *See, e.g.*, Ex. 23, Doc. 6-1, at 221-22. The handwriting more closely resembles Petitioner's signature, *see* Doc. 1, at 15, and does not match other signatures from Attorney Mancino in the record, *see, e.g.*, Ex. 23, Doc. 6-1, at 222; *see also* Doc. 1-2.

only a single claim: ineffective assistance of trial counsel for failure to challenge certain testimony. *See* Doc. 1, at 5. In his Reply/Traverse, he raises additional claims regarding sentencing error, jury instructions, sufficiency of the evidence, double jeopardy (multiple punishments), and that his sentence was based on judicial fact-finding contrary to *Blakely/Apprendi*. *See* Doc. 9. The single ground and supporting facts in the Petition, even liberally construed, cannot be read to encompass these entirely separate claims. Doing so would require the Court to "conjure up unpled allegations." *Dietz,* 100 F. App'x at 338.

*Raising New Claims in Traverse*

Next, as Respondent correctly point out, arguments first raised in a Reply/Traverse and not in the Petition are not properly raised. *Tyler v. Mitchell*, 416 F.3d 500, 504 (6th Cir. 2005) ("Because [this] argument was first presented in Tyler's traverse rather than in his habeas petition, it was not properly before the district court, and the district court did not err in declining address it."); *see also Nouri v. McQuiggin*, 535 F. App'x 513, 514 (6th Cir. 2013) (district court properly declined to address petitioner's claim because he failed to raise the issue in his habeas petition or seek leave to amend the petition to include the claim) (per curiam); *Marsh v. Bradshaw*, 2017 WL 68514, at n.2 (N.D. Ohio); *Welch v. Lazaroff*, 2016 WL 1367894, at *6 (N.D. Ohio); *Smith v. Bagley*, 2014 WL 1340066, at n.15 (N.D. Ohio); *Jaffal v. Bradshaw*, 2013 WL 3337404, at n.8 (N.D. Ohio); *Palmer v. Bagley*, 2005 WL 3965400, at *8 ("A traverse, however, is not the proper vehicle in which to raise new claims or sub-claims in habeas corpus."), *report and recommendation adopted,* 2006 WL 1027733 (S.D. Ohio).

Although the original Petition, filed *pro se*, is entitled to liberal construction, the same is not true for the Traverse, filed by counsel. A Traverse is not the proper means to raise additional

claims, and a district court properly declines to address claims so raised. *Tyler*, 416 F.3d at 504; *Nouri*, 535 F. App'x at 514.

## CONCLUSION

Following review, and for the reasons stated above, the undersigned recommends the Court deny the Petition. Ground One should be dismissed because it is procedurally defaulted, or, alternatively, meritless. The additional grounds raised Petitioner's Traverse are not properly before this Court and should not be considered.


 s/James R. Knepp II
United States Magistrate Judge


*ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).